No. 13856

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

STATE OF MONTANA, ex rel.,
HOLT W. CORETTE, et al.,

                    Relators and Appellants,

          -vs-
MONTANA DEPARTMENT OF REVENUE et al.,

                    Respondents and Respondents,

JACK C. SEITZ, et al.,

                    Intervenors and Respondents.

---

Appeal from:   District Court of the First Judicial District,
               Honorable Peter Meloy, Judge presiding.

Counsel of Record:

     For Appellants:

          Milodragovich, Dale & Dye, Missoula, Montana
          Harold Dye argued, Missoula, Montana

     For Respondents:

          David Jackson, Helena, Montana
          Robert Corcoran argued, Helena, Montana

     For Intervenors:

          Garlington, Lohn and Robinson, Missoula, Montana
          Ronald B. MacDonald argued, Missoula, Montana

---

                         Submitted:  March 7, 1978

                         Decided:  APR 1 1978

Filed:  APR 1 1978

*Thomas J. Kearney*
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court:

Plaintiffs appeal from an order of the District Court, Lewis and Clark County, denying their petition to that court for a writ of prohibition and mandamus directing the State Department of Revenue to desist from allowing the transfer of a liquor license from Eddie's Club to the Silvertip Lounge and Liquor Store in Missoula.

Plaintiffs are Missoula residents in the area near the intersection of Southwest Higgins and Bancroft Avenues in Missoula, and live close to the new Silvertip Lounge and Liquor Store. In seeking to prevent intervenor Jack C. Seitz from operating the new lounge and liquor store, plaintiffs petitioned the District Court for the writ.

The dispute revolves around the interpretation of section 4-4-203, R.C.M. 1947, which provides:

> "Lapse of license for nonuse. From and after February 1, 1949, any retail license issued pursuant to this code * * * not actually used in a going establishment for a period of ninety (90) days, shall automatically lapse. Upon determining the fact of nonuser for such period the department shall cancel such license of record and no portion of the fee paid therefor shall be refundable. * * *" (Emphasis added.)

Plaintiffs contend that Seitz, in transferring the liquor license to his new place of business, did not do so within the 90 day period and he therefore lost his right to the license.

The District Court issued a temporary writ and set March 4, 1977, as the date for a show cause hearing. At the hearing, license holder Jack Seitz and other investors in the new liquor establishment were allowed to intervene without objection from plaintiffs. On March 29, the District Court quashed the writ and dismissed the petition and plaintiffs appeal.

Seitz is the holder of an all beverage retail liquor license used formerly at Eddie's Club at 428 North Higgins Avenue in Missoula. On August 9, 1976, he submitted an application to transfer the location of the license to the Silvertip Lounge, a proposed facility not then constructed, located at the intersection of Southwest Higgins and Bancroft Avenues. The new location was zoned to allow a bar and was bordered by commercial businesses to the west, apartments and offices to the south, and single family residents on the east and north.

The required statutory notice of the application for transfer was published, and the Liquor Division of the Department of Revenue (the licensing authority) conducted a hearing in Helena on September 10, 1976. No one appeared to protest the transfer. Nor did Seitz or any of his investors appear at the hearing. On September 16, 1976, the licensing authority granted the application for transfer subject to compliance with health regulations and final inspection.

Following this conditional approval of the license transfer, Seitz and his investors obtained financing for the purchase of the property and for construction of the new building. Seitz continued to operate Eddie's Club until February 13, 1977, at which time he closed the business to help complete construction of the new building.

On April 28, 1977, the licensing authority inspected the new premises and completed the transfer of the license. On May 5, 1977, Seitz requested an extension of time for nonuse of the license past 90 days, pursuant to section 4-4-203, because he was not quite ready to open for business. An extension was granted from May 13 to May 31, but Seitz used only one day of the extension before he opened for business on May 14.

Plaintiffs contend that at the time the license transfer was approved, April 28, 1977, the 90 day nonuse provision of section 4-4-203 had already expired, and therefore the licensing authority had no right to complete the transfer. They argue the period of nonuse commences to run as of the date that conditional approval for the license transfer is obtained. Accordingly, they contend the license automatically lapsed 90 days from September 16, 1976, the date the conditional approval was granted.

Section 4-4-203 is silent as to whether it applies to transfers of an existing license to another place of business. However, plaintiffs contend that an administrative regulation ( MAC 42-2.12(6)-S1298(8)) requires such construction. That regulation provides:

> "Any licensee or applicant requesting an
> extension of time for non-use of a license * * *
> shall furnish written evidence, certified to be
> correct, of the reasons for his failure to place
> said license in operation within the time prescribed."

This reliance is misplaced. This regulation does not apply to transfer of a license. It applies only to one who originally applies for a license or one who has the license but has not yet put it into operation by actually commencing business. A separate administrative regulation (MAC 42-2.12(6)-S12013) specifically covers license transfers and says nothing about the effect of nonuse of a license while a transfer is pending.

To adopt plaintiffs' argument would mean that in the absence of an extension obtained from the licensing authority, an applicant for transfer of a license must, within 90 days of the date of conditional approval of the license, obtain all the financing, purchase the property, build new premises and actually commence business. This approach is supported by neither logic nor fairness.

- 4 -

Plaintiffs ignore reality by contending the 90 day period of nonuse commences upon conditional approval, and the right to transfer vested on that date, subject to divestment only upon failure to meet health requirements and inspection. The fair and logical answer is that the license continues in the old place of business (as long as it is actively being used) until the ultimate transfer is approved by the licensing authority.

The order of the licensing authority granting conditional approval on September 16, 1976, stated:

> "The application for transfer of ownership and/or location of the license above-described is approved, subject to favorable final inspection of the premises and compliance with the rules and regulations of the Department of Health and Environmental Sciences."

A related letter dated October 29, 1976, stated: "This letter does not constitute authority for the purchase and/or sale of alcoholic beverages." Surely the purchase and sale of liquor are the primary rights of a license holder which are implied under section 4-4-104, R.C.M. 1947. The true use of the license does not take place at the new premises until liquor can be sold.

The bureau chief of the licensing authority testified that the usual procedure of the licensing authority is not to recognize transfer of the license until the date of final approval. Until that time the licensing authority allows the applicant to operate under the license on the former premises.

A similar situation was faced in Passarella v. Board of Commissioners of Atlantic City, (1949), 1 N.J.Super. 313, 64 A.2d 361, 363, where the court stated:

> "* * * Venafro's application for transfer of his license was justified, to the end that he might ascertain the attitude of the municipal body with respect thereto. Otherwise, he would have been burdened with the expenditure of a large sum of

money to erect and construct a building on the
vacant lot in question at the risk of the possible
refusal of the municipal body to approve such a
transfer."

The New Jersey court also recognized that the established prac-
tice of the board allowing use of the license in the former loca-
tion was given "great weight * * *, especially where no legislative
action has been subsequently taken to indicate a contrary view
* * *." 64 A.2d 364.

Here, it is also clear that the licensing authority is
empowered by statute to take the action it did. Under the Alcoholic
Beverage Code of 1975, the powers of the licensing authority include
the following under section 4-1-302, R.C.M. 1947:

"(h) To grant and issue licenses under and in
pursuance to this code;

"(i) Without in any limiting, or being limited
by the foregoing, to do all such things as are deemed
necessary or advisable by the department for the pur-
pose of carrying into effect the provisions of this
code, or the regulations made thereunder."

Moreover, section 4-4-206(3), R.C.M. 1947, allows a transfer of
location "to do justice to the licensee applying for the transfer"
subject to "sanitary, health and service facilities * * *." These
statutes surely empower the licensing authority to allow the
license transfer applicant to continue his livelihood while final
approval of the transfer is pending.

Plaintiffs also argue that only their interpretation will
prevent abuse of the liquor license system through speculation on
population growth. They use the example of a transfer of a rural
license to a location just outside the city limits, and then holding
the license at the original location until the city limits incorporate
the location of the proposed liquor license transfer, thereby
automatically increasing the value of the license under an urban
classification. While the possibility may exist, it does not exist

- 6 -

under the facts here. Immediately upon conditional approval, Seitz and his investors obtained financing and commenced construction of the new facility, notifying the licensing authority that completion would be in mid-May 1977. Completion occurred on schedule. Furthermore, we cannot believe the licensing authority is without power to prevent speculation in the manner suggested by plaintiffs.

Under the circumstances presented here, it is clear that nonuse of the license as contemplated by section 4-4-203 did not commence until Seitz closed Eddie's Club on February 13. Within 90 days thereafter he was obligated to either open for business in his new establishment or obtain an extension. He obtained an extension within the 90 day period and actually used only one day of the extension. Accordingly, Seitz was not in violation of the statute.

Plaintiffs did not raise the issue of the sufficiency of the notice of application for transfer. However, for future cases we feel it necessary to comment on the notice in this case as it relates to the public's right to know. It is doubtful plaintiffs would have filed this action if they had received a meaningful notice of the hearing to be held on Seitz's application for transfer of his license.

Section 4-4-302(1), R.C.M. 1947, requires, inter alia, that notice of application for a liquor license or transfer of a liquor license be published once a week for two consecutive weeks in a local newspaper and that a hearing date in Helena be set to hear anyone who has a protest. The statutory form of notice which applied to this case provided:

- 7 -

"NOTICE OF APPLICATION FOR RETAIL ALL-BEVERAGES
LICENSE

"Notice is hereby given that on the ____day
of ____19____, one (name of applicant) filed an
application for a retail all-beverages license
with the Montana department of revenue, to be
used at (describe location of premises where
beverages are to be sold), and protests, if any
there be, against the issuance of such license
will be heard at the hour of ___M, on the ____
day of ____,19___, at the office of the Montana
department of revenue in Helena, Montana."
(Emphasis added.)

The notice published in the instant case stated it was
an application for a transfer of a license, and complied with
the statute in all important particulars.

Plaintiffs stated they did not see the notice when it was
published in the newspaper and for this reason did not attend
the hearing to protest the building of a liquor establishment
so near their homes. They first realized what was being built
on the property involved after Seitz started construction.
Plaintiffs freely admit their only purpose in applying for the
writ and mandamus was a last ditch attempt to prevent the liquor
store from being operated at its new location.

The notice published in the newspaper described the
proposed new premises by its legal description. This is hardly
terminology that a layman could understand. The notice in these
situations is such that it is meaningless to all but the well
versed in legalese.

Notice is the first procedural cornerstone of due process
of law. Without it the remaining procedural rights cannot be
effectively exercised, if at all. The notice provisions set out
in statutes are minimum requirements and there is no certainty that
all of them give adequate notice. Those public agencies that are
charged with conducting the public's business through hearings,

have the right and indeed, often the duty to provide additional notice other than the minimum required by statute or by their own rules.

For example, in the present case the street of the proposed liquor establishment could have been given, together with a statement that it would be located at the intersection of Southwest Higgins and Bancroft Avenues. In addition, a proposed new establishment may be located near familiar landmarks, long established and well known stores or other businesses, and could be easily pinpointed by such references. It would be a simple matter to tie the property to the landmarks involved, so that citizens most likely affected would have a better chance to know the proposed location of the new business. The notice could tell the public they could send written and signed protests to Helena in advance of the hearing date. If these letters were to be used as a basis to deny the application, the applicant could be notified before a final determination and he could be granted an opportunity to meet the information contained in the letters.

Nor do we think it necessary or advisable to stop at the legal section of the newspapers for the publication of notices. The agency could also issue a news release which would be more likely to reach the public and, accordingly, those who may be most affected by the proposed action. We think it safe to assume that only those who have a specific interest in the legal notice section of the newspaper will ever take the time to read it regularly. We do not think there is a duty to read the legal notice section of the newspaper every day if one wants to be notified that a lounge and liquor store might be built next to his home.

In the situation here it is most likely the residents near the proposed new lounge and liquor store would have the greatest

interest in providing input to the licensing authority, as to the propriety of the location. If the licensing authority is in fact interested in the opinions of the citizenry it would be simple enough to require the posting of the property involved. This could be done with conspicuous signs and conspicuous lettering, placed at or near the proposed location where the affected public would be most likely to see them. The signs, for example, could state that the location was proposed for a new lounge and liquor store and state the time and place for the hearing of any protests. In this regard the states of Arizona (2 Ariz. Rev.St. Anno. §4-201) and New Mexico (N.M.Stat. Anno. §46-4-11) require notice to be conspicuously posted at the proposed place of business of a new liquor establishment.

In view of the circumstances in this case, we do not deem it unusual that no protestors traveled to Helena or wrote to Helena, and that the applicant and his investors were so assured of a successful transfer that they did not bother to show up at the hearing. Too often the dealings of commerce are enshrouded in secrecy, encouraged by governmental acquiescence. This cannot be tolerated where the public has the right to be informed by the government of the proposed actions of the commercial world. It is the obligation of government to effectively inform the public wherever the public has a right to know, and the government cannot squeak by in every case by complying only with the minimum statutory requirements of notice. Due process of law is more meaningful than that.

In view of the circumstances as exist in this case, and that the issue of notice was not raised in the trial court or on appeal, the decision of the District Court is affirmed.

_____
Justice

- 10 -

Mr. Chief Justice Frank I. Haswell, specially concurring:

I concur in the result and the interpretation of the statute on which it is based. However, the discussion of notice is beyond the issues in the case and should not be included in the opinion in my view.

_Frank I. Haswell_
_____
Chief Justice

. . . . . . . . . . .

Mr. Justices Gene B. Daly and Mr. Justice John C. Harrison:

We concur with the above special concurrence of Mr. Chief Justice Frank I. Haswell.

_Gene B Daly_
_____
_John Conway Harrison_
Justices.
